Kirkpatrick *v.* Corning.

ANDREW KIRKPATRICK, receiver &c.,

*v.*

ERASTUS CORNING et al.

The firm of James Horner & Co., composed of James Horner and James Ludlum, was dissolved by the death of Horner in 1874. His executrix filed a bill in chancery in 1874, against Ludlum, for an account and settlement of the partnership estate, which consisted of lands, factories, and a large amount of personalty. The bill also prayed for the appointment of a receiver, and Ludlum was appointed, with the usual powers, and also with leave to bid at his sales, and with power also to redeem with the funds any of its estates from mortgages thereon. The title to the partnership lands was, after Horner's death, in his devisees and in Ludlum, and those lands were covered by two mortgages held by Corning. On their foreclosure, Ludlum was made a defendant as owner, but not as receiver, and a decree *pro confesso* was rendered against him, while the other defendants therein answered. Corning bought all of the lands at foreclosure sale, in 1877, and through Ludlum, as his agent, bought personal property belonging to the firm at the master's sale thereof in 1876. They organized a corporation after the sale of the personal property, and transferred all that (the personal) property to the corporation. Ludlum was removed as receiver in 1879, and Kirkpatrick appointed in his place.—*Held*, that Kirkpatrick could not, as receiver, redeem the premises from the foreclosure sale, on an allegation that the mortgages were usurious and

void by the law of New York, where they were made, on the ground that Lud-
lum ought to have been a party defendant in the foreclosure suit as receiver
as well as individually; nor on the ground of fraud and collusion between
Ludlum and Corning, at the foreclosure sale, as to certain water rights which
had been held by the firm, and a renewal of which was obtained in the name
of Ludlum's wife before that sale, or of fraud and collusion as to the sale of the
personal property; held, further, that the bill was multifarious as to the corpo-
ration, in that it prayed general relief against the corporation as to the firm's
lands, as well as personalty, when the corporation, in fact, had no interest in
those lands.

Bill for relief.   On general demurrer.

*Mr. T. N. McCarter* and *Mr. Amasa J. Parker*, of New York,
for demurrants.

*Mr. F. W. Stevens* and *Mr. C. Parker*, for complainant.

THE CHANCELLOR.

This bill is filed by the present receiver of the late firm of
James Horner & Co. against Erastus Corning, James Ludlum
and Susan H., his wife, Alice Buckingham, as executrix and de-
visee under the will of James Horner, deceased, and John M.
Buckingham, her husband, Susan Horner and the Pompton
Steel and Iron Company. It states that the firm of James
Horner & Co. was composed of James Horner and James Lud-
lum, and carried on the business of manufacturing steel and
files at Pompton, in the county of Passaic, in this state; that it
was dissolved in 1874 by the death of Horner; that at his
death it owned very valuable real and personal property at
Pompton; that the real property was worth from $150,000 to
$200,000, and consisted of a large and valuable tract of land,
on which were the works, water power by which they were
operated, a mansion in the course of construction, and certain
dwelling-houses for employees; that the personal property was
also of very large value, from which Ludlum, as receiver (he
was the first receiver of the partnership property), realized $233,-
380.09, more than half of which was at once available for the
payment of debts, and there was a debt due from Ludlum of
$73,975.47; that the liabilities of the firm, including $115,000

then claimed by Corning to be due to him on the mortgages he held on the property, amounted to $180,490.68; that the excess of actually realized assets over the liabilities was $133,399.41, of which $37,018.72, represented by files of that nominal value, were equally divided between Horner's executrix and Ludlum, and the balance was used in working up the stock, paying interest, taxes and the expenses of Ludlum's receivership; that Horner, by his will, gave to Ludlum's wife all his interest in the land on which the before-mentioned mansion-house was being built, and after providing for payment of his debts, gave the residue to Mrs. Buckingham for her own use, except as to a fourth part, which she was to hold in trust for his other daughter, Susan, for the life of the latter, and made the former his executrix; that Mrs. Buckingham proved the will, and in 1874 filed a bill in this court, as executrix, against Ludlum for (amongst other things) an account and settlement of the partnership estate, and for a receiver; that under those proceedings Ludlum was appointed receiver; that the order of appointment appointed him receiver of all the property and assets of the firm, with power to collect and receive all moneys and other property, and to pay the debts and to take and retain possession of the property with a view to the ultimate settlement of the affairs and business of the concern in this court; required him to make an inventory of the property and debts; gave him power to compound for any of the outstanding debts; to extend the time of payment; to prosecute and defend in his name, as receiver, all such suits as he should deem expedient, and to sell the personal estate; gave him power to redeem from mortgage any of the estates belonging to the firm, and to use for that purpose any funds in his hands belonging to the firm; required him to hold all the estates, property, debts and effects, except such as should have been disposed of by the decree, and all the works &c., subject to the order and direction of this court, and gave him authority, notwithstanding his office of receiver, to bid for himself in person, or by agent, at any sale, and buy in property in his own name, but provided that such purchases should not be carried into effect without the sanction and order of this court.

The bill further states that from Horner's death up to the time when the property of the firm was sold, Ludlum had possession of the property, real and personal, of the firm, and the complainant insists that from the time he was appointed receiver, Ludlum's possession was as receiver. He was removed from office July 31st, 1879, and the complainant appointed in his stead. The bill further alleges that on the 22d of June, 1875, Corning began suits for foreclosure of the two mortgages he held on the real estate—one given by Horner and Ludlum to Gabriel W. Ludlum, March 12th, 1863, for $50,000, and assigned by the mortgagee to Erastus Corning, senior, Corning's father; the other given by Horner and Ludlum to Erastus Corning, senior, August 23d, 1866, for $68,915; both of which mortgages were, on the death of Corning's father, assigned, by his executors, to one Marvin, by whom they were assigned to Corning. It appears by the bill that the defendants to the bill in those suits were Ludlum and his wife, Buckingham and his wife, and Eliza Horner and Susan Horner; that Buckingham and his wife answered only, setting up that there was ample personal property of the firm to pay the mortgages, and that it ought to be applied to such payment. Ludlum did not answer, and there was a decree pro confesso against him. There was a decree for foreclosure and sale in the suits (they were consolidated) for $96,209.23. The decree, in the usual language, barred the defendants. The bills made no mention of the receivership, nor of the fact that the mortgaged premises were partnership property. Subsequently to the decree, there was credited on the execution the sum of $24,-349.18, for the price of personal property of the firm, bought by Corning at a sale under the order of this court, by one of its masters, leaving due, on the day of sale under the execution in the foreclosure suits, $80,510.10, for which sum Corning bought the mortgaged premises at the foreclosure sale. The bill alleges that the contract for the loan secured by the mortgages was usurious, and by the law of New York, where it was made, therefore void, and that the decree was for about $20,000 more than was equitably due on the mortgages, if only the amount advanced and interest thereon be allowed. It also claims that there ought to

have been a further deduction of $30,000 for the value of the personal property bought by Corning at the master's sale, through Ludlum, as his agent, over the price at which he bought it there; the complainant insisting that Ludlum, because he was receiver, had no right to buy for Corning at that sale. The bill also states that before the foreclosure sale, the license or lease which the firm had to flow certain land for the water power, by which the factory machinery was run, with a right to buy the land at a stated price during the term, expired, and that Corning's solicitor got a renewal of it to Ludlum's wife for Corning and Ludlum, and that Ludlum, at the sale, stated that the firm's right to flow the land had expired, and that the right would be held by his wife adversely to the purchaser. It is further stated by the bill that after the sale of the personal property by the master, a company (the Pompton Steel and Iron Company) was organized by Corning and Ludlum, under a charter granted by the legislature in 1866, but which had not been used previously to the sale, and on its organization, the personal property purchased by Corning, through Ludlum, at the master's sale, was transferred to the company, which paid for it to Corning in its capital stock; that the company was organized in the interest and for the benefit of Corning and Ludlum, who are stockholders and directors therein, and have absolute control of it; that Ludlum has been president and treasurer of it, and managed its concerns from its organization, and that he and Corning have organized it merely for business convenience, and that an understanding exists, and has existed ever since the sale, that when the mortgages to Corning shall have been fully satisfied, Ludlum is to resume the ownership and control of the property. The bill does not charge Corning with actual fraud, but insists that while he may not be so chargeable, yet he has so dealt with Ludlum, who, as receiver, stood in the position of trustee, and has so far accepted Ludlum's wrongful acts, as to be chargeable with constructive fraud in his acquisition and subsequent use of the partnership property, and so as to be accountable in equity, and on equitable terms, to the complainant.

The suit is brought to redeem the property sold under the

foreclosure, on the payment of the amount, if anything, now due on the mortgages, after allowing only the amounts advanced, with lawful interest, and deducting the fair value of the use and occupation of the real property since the foreclosure sale, and crediting, also, the full value of the personal property bought by Corning at the master's sale. The bill also prays that if redemption be denied, the foreclosure sale may be set aside and a new sale ordered, to raise what, if anything, may be due, computing the amount and making the allowances in the way just stated.

The claim of a right to redeem rests wholly upon the assumption that the receiver of the partnership was a necessary party to the foreclosure suits. He was a party in his individual capacity but not as receiver. The complainant insists that, by the order appointing Ludlum receiver, he was vested with such an interest in the property as made him a necessary party to those suits. But he had no legal title as receiver. The legal title was in him individually, and Horner's heirs-at-law. By the order, he had power to take and hold possession of the property with a view to the ultimate settlement of the firm's affairs in this court, and he had power to redeem any of it from mortgage debts, and to use for that purpose any funds in his hands belonging to the firm. But that was a mere authority to apply partnership funds to a designated use. He was authorized to sell the personal property, but not the real. The order vested no title whatever to the real estate in him as receiver. He was not, as receiver, a necessary party to the suit. This very question, as to the necessity of making receivers with similar powers, parties to a foreclosure suit, was fully considered and decided in *Willink* v. *Morris C. & B. Co., 3 Gr. Ch. 377.* The court said: "The property of the company does not vest in the receivers, nor does the appointment of receivers necessarily put an end to the corporation. The receivers have the sole power over the corporation; they are substituted in the place of the directors and managers, but for the purpose of settling up and closing the affairs of the company. The title to the property is not changed, but a power only is delegated to the receivers to take charge of and sell it. These receivers, too, may bring suit in their own

name, and for aught I see, in the name of the corporation, should they prefer it; and if so, they may defend a suit in the name of the corporation." It is true, in that case, the appointment of the receivers was subsequent to the filing of the bill, and there was a decree *pro confesso* in the cause before they were appointed, but the court might have ordered that they be made parties, nevertheless, had it seen fit to do so, and its language is important as showing the relation which a receiver, with such powers as Ludlum had under the order of this court, bears to the real estate. It is urged by the complainant's counsel that a contrary opinion was expressed by Vice-Chancellor Van Fleet in *Freeholders* v. *State Bank, 2 Stew. Eq. 268,* and that his judgment was affirmed by the court of errors and appeals in *S. C., 3 Stew. Eq. 311.* But the view the vice chancellor expressed on the subject was not necessary to the decision of the case, and there was no opinion in the court of last resort. Moreover, the same judge, in the subsequent case of *State Bank* v. *Plainfield Bank, 7 Stew. Eq. 456,* expressed the opposite view—one in accordance with that of Chancellor Pennington in *Willink* v. *Morris C. & B. Co.* See, also, *Wilson* v. *Wilson, 1 Barb. Ch. 592.*

The receiver, in his individual capacity as one of the owners of the equity of redemption of the mortgaged premises, was made a party to the suits. And the Buckinghams and Eliza Horner and Susan Horner, legatees under the will of Mr. Horner, were parties also. Mrs. Buckingham and her sister, Susan Horner, were the heirs-at-law of James Horner. Though Mr. and Mrs. Buckingham answered, they did not allege the necessity of making the receiver a party to the suit. Susan Horner having failed to answer in due time, applied for leave to answer, but failing to show that she had any equitable and meritorious defence, the permission was denied. *Horner* v. *Corning, 1 Stew. Eq. 254.* The court of errors and appeals, in that case, speaking in reference to her defence, that the mortgaged premises ought not to be sold until certain equities between the defendants against each other had been settled, and that Ludlum, as receiver of the personal estate and the rents and profits of the real,

ought to be required to pay Corning's mortgages out of the money and assets in his hands as receiver, before the mortgaged premises were resorted to, said it was not shown nor alleged that Corning was in anywise affected by those equities, and that there was no question of the validity of the complainant's mortgages, nor as to the amount due on them. It appears also, by the opinion, that it was alleged that there was collusion between the receiver and Corning. If there was, indeed, usury in the loans for which the mortgages were given, and for want of information, any of the parties in interest did not set up that defence in the foreclosure proceedings, they must be held to be concluded by the decree. And, finally, if the receiver was not a necessary party, there is no right to redeem. It may be remarked that it appears by the bill, that before the institution of the foreclosure proceedings, the debts of the firm were all paid, except the mortgage debts of Corning and another of $10,000 due to the Mutual Benefit Life Insurance Company, and a claim of Joseph W. McElroy, for services as superintendent of part of the business of the firm, which claim is in litigation; and that there was personal property to the amount of $120,000, besides the money due from Ludlum, all applicable to the payment of the debts. It appears that personal property of the firm, of the value of over $37,000, was divided between Mrs. Buckingham and Ludlum, and it is not alleged that all the debts are not paid. The only persons, then, who are represented by the complainant in this suit, are Ludlum and those who are interested under the will of Mr. Horner. All of them were parties to the foreclosure proceedings, and it is manifest that this suit is, in fact, prosecuted in behalf of Mr. and Mrs. Buckingham, and Eliza and Susan Horner.

As to the other phase of the case: It is claimed that the conduct of Corning in reference to the purchase of the personal property, and his dealings with regard to the lease of land to be flowed, indicate fraudulent combination between him and Ludlum. That Ludlum had a perfect right to purchase at the master's sale for Corning is clear. By the order of his appointment as receiver, leave was given to him to buy the personal,

property, subject to the sanction of this court. By the order directing the master to sell, the like leave, but this time without qualification, was given to him. If he might bid for himself, why not for others? If his conduct was illegal, the matter should have been brought before this court as ground for setting aside the sale. The facts were fully known at the time of the sale, as appears by the bill. And, as to the water right: When the sale under the foreclosure proceedings took place, the lease of the firm had expired. After it expired, Corning's solicitor, with a view to controlling this (according to the bill) most material privilege, obtained a lease for it, taking it in the name of Mrs. Ludlum. The bill says the solicitor was acting in the matter for Corning and Ludlum, and that Mrs. Ludlum has, ever since it was obtained, held the lease for their benefit, but how, in what particular way, it is to benefit Ludlum, the bill does not state, nor does it appear, except as it is stated in the bill, it is understood between Ludlum and Corning, that after the latter's claim shall have been paid, Ludlum is to have the property. At the foreclosure sale Ludlum proclaimed that his wife held the right, and would hold it adversely to any purchaser. Corning bid the whole amount of his claim (over $80,-000) for the property. It is not alleged that the conduct complained of, now under consideration, caused the property to bring less than it otherwise would have brought; and if such had been the fact, the proper relief was by motion to set aside the sale. There appears to have been no concealment whatever. The sale of the personal property took place November 21st, 1876, and the sale of the real, July 5th, 1877. The complainant was appointed receiver in July, 1879, and this suit was not brought until November, 1882. Immediately after the sale of the personal property a corporation was, as before stated, organized, to which the personal property bought by Corning was transferred, so that then a new party became owner of it, a corporation which is brought into this suit merely because it is such owner. The bill states that the company was organized in the interest of Corning and Ludlum, and that they control it; but those facts, obviously, will not deprive it of the right to be regarded as a

*bona fide* purchaser for value, without notice. Under this bill the complainant is entitled to no relief.

Moreover, the bill is multifarious. It seeks to redeem and it also seeks relief as against Corning and Ludlum and the Pompton Steel and Iron Company, in reference to the personal property. That company has no interest in the real estate and ought not to be called on to answer in regard to it. The demurrer will be allowed.